UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEREMY R. RUOFF<br>and MARIA RUOFF, h/w, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 10-2068 |
| v. | : | |
| RISNYCHOK AND ASSOCIATES, INC., et al., | : | MEMORANDUM OPINION<br>& ORDER |
| Defendants. | : | |

This matter is before the Court on cross-motions for summary judgment.  Oral argument was heard on the motions on June 1, 2011, and the record of that proceeding is incorporated here.

<u>Background</u>

On or about April 11, 2005, Plaintiff Geremy R. Ruoff was involved in an automobile accident in Bordentown Township, New Jersey, while operating a vehicle in the course of his employment for American Asphalt Company, Inc.  Plaintiff's truck was struck in the rear by a vehicle operated by Roni L. Michaels and owned by Esther Michaels, insured by State Farm Indemnity Company with (third-party) liability limits of $100,000/$300,000.  Plaintiff was seriously injured in the accident, and recovered from the Michaels' insurance company.

At the time of the accident, American Asphalt had a policy of insurance for business/commercial automobile coverage with the Pennsylvania National Mutual Insurance Company, with uninsured/underinsured motorist coverage in the amount of $1,000,000.  That policy, however, included a step-down provision, which limited uninsured/underinsured coverage to $100,000.

Due to the serious injuries he sustained as a result of the auto accident, Plaintiff made application to his employer's business automobile insurance carrier under the policy for underinsured motorist coverage.  On March 6, 2006, Penn National Insurance denied Plaintiff's application for underinsurance motorist benefits because Plaintiff was insured under a family member's policy for similar insurance.  Indeed, Plaintiff was insured through his wife's private passenger automobile policy with Hanover Insurance Company, with (first-party) uninsured/underinsured coverage in the amount of $100,000.  Therefore, the limits of coverage available under the Penn National Insurance Policy were "stepped down" to the policy limits of $100,000 under the Hanover of New Jersey Policy held by Plaintiff's spouse.

Having collected from the traditional first-party coverage that was available to him, Plaintiff now contends that a commercial umbrella policy issued by The Insurance Company of the State of Pennsylvania to Plaintiff's employer, American Asphalt, provides underinsured motorist benefits that Plaintiff is eligible to receive.  To that end, Plaintiff has alleged that he was also insured by Defendants AIG Domestic Claims, Inc. and/or The Insurance Company of the State of Pennsylvania.  He gave notice of the automobile accident to these Defendants, and requested underinsured motorist benefits under the umbrella policy.  Plaintiff contends in Count Seven of the Complaint that Defendants AIG Domestic Claims, Inc. and/or The Insurance Company of the State of Pennsylvania have refused to honor his claim for underinsured motorist benefits, and have refused to proceed to underinsured motorist arbitration.

Apparently, AIG Domestic Claims, Inc. is now known as Chartis Claims, Inc. Chartis Claims, Inc. and The Insurance Company of the State of Pennsylvania (ISOP)

2

have now moved for summary judgment [25].  They argue that the ISOP policy does not provide underinsured motorists coverage to Plaintiff, as it is a third-party liability policy that does not provide first-party coverage.  Further, Chartis argues that it did not issue and is not a party to the ISOP policy, so there can be no claim against it.   Plaintiffs have opposed the motion, and have filed a cross-motion for summary judgment [32].  Plaintiffs contend that the express terms of the umbrella policy provide underinsured motorists coverage where three conditions required for such coverage have been met, so underinsured motorist coverage should be provided here.

Discussion

A.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a

dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role

is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. New Jersey Law Applies

The Court applies the substantive law of the State of New Jersey pursuant to the mandates of Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "A federal court under Erie is bound to follow state law as announced by the highest state court." Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).

C. The Insurance Policy at Issue

The commercial umbrella policy issued by ISOP to American Asphalt in effect on the date of Plaintiff's accident provided the following in its insuring agreement:

> **We** [ISOP] will pay on behalf of the **insured** those sums in excess of the Retained Limit that the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **insured** under an **insured contract** because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** that takes place during the Policy Period and is caused by an **occurrence** happening anywhere in the coverage territory. The amount **we** will pay for damages is limited as described in SECTION III. LIMITS OF INSURANCE.

(ISOP Policy, Exhibit B to Zarillo Aff. at CVCHPM-152-0001785.)

Under Section IV, "Who Is An Insured," the policy provides:

> F. Any person or organization, other than the **Named Insured** [American Asphalt], included as an additional insured in the policies listed in the Schedule of Underlying insurance but not for broader coverage than is available to such person or organization under such underlying policies.

(Id. at CVCHPM-152-0001796.) The Schedule of Underlying Insurance identifies "auto liability" coverage issued by Penn National Insurance in the amount of $1,000,000 combined single limit. (Id. at CVCHPM-152-0001773.)

The movants contend that the ISOP policy provides third-party liability coverage to an insured, protecting the insured against his or her liability to others, but does not provide first-party benefits to the insured.  Assuming Plaintiff is an insured under the ISOP policy, the argument continues, he would not be entitled to underinsured motorists coverage under that policy, because underinsured motorists coverage is first-party coverage which would cover Plaintiff as an insured if he had to defend against a claim.  As a result, movants assert that the ISOP policy does not provide underinsured motorists coverage to an insured like the Plaintiff.  Finally, there is no arbitration provision in the ISOP policy.

In contrast, Plaintiff contends that the declarations page and the attached schedule of the Penn National Policy refer to the fact that the Penn National Policy provides underinsured motorist coverage.  (Exhibit D to Zarillo Aff. at 0001-0009.)  The Penn National Policy also contains a "New Jersey Uninsured and Underinsured Motorists Coverage" endorsement that states, "We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an . . . underinsured motor vehicle."  (Id. at 00075).

Plaintiffs insist that the ISOP policy is not limited to liability claims, but provides for underinsured motorist coverage when certain conditions have been met.  Specifically, Plaintiffs reference Section V of the ISOP policy, titled "Exclusions."  That section states:

This insurance does not apply to:

*       *       *

C.  Any obligation of the insured under a No Fault or Uninsured Motorist Law.

6

However, the above exclusion for the Uninsured Motorist Law does not apply when Uninsured Motorist coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies; and

>    1.  The bodily injury limit of insurance for Uninsured Motorist coverage and automobile liability bodily injury limits of insurance of the policies listed in the Schedule of Underlying Insurance are equal; and (if applicable)
>
>    2.  The property damage limit of insurance for Uninsured Motorist coverage and automobile liability property damage limits of insurance, which may be included under state law, if applicable, of the policies listed in the Schedule of Underlying Insurance are equal.
>
>    The term Uninsured Motorist Law includes Underinsured Motorist Law when and to the same extent as provided in the policies listed in the Schedule of Underlying Insurance for such Underinsured Motorist coverage; . . .

(Exhibit B to Zarillo Aff. CVCHPM-152-0001796-97.)

Plaintiffs argue that the above language provides for underinsured motorist coverage when:

>    1. Uninsured Motorist coverage is included in the policy listed in the Schedule of Underlying Insurance;
>
>    2. The bodily injury limit of insurance for Uninsured Motorist coverage and automobile liability bodily injury limits of insurance of the policies listed in the Schedule of Underlying Insurance are equal; and
>
>    3.  The property damage limit of insurance for Uninsured Motorist coverage and automobile liability property damage limits of insurance as listed in the Schedule of Underlying Insurance are equal.

Thus, according to Plaintiffs, since the bodily injury and property damage limits for Uninsured Motorist coverage of the Penn National policy, listed in the Schedule of Underlying Insurance, both equal the $1,000,000 limit of automobile liability, Plaintiffs are entitled to Uninsured Motorist coverage through the ISOP policy.

7

D.  Analysis

Plaintiffs consent to the dismissal of Chartis Claims as a Defendant because it is uncontested that Chartis Claims did not issue the ISOP policy and is not a party to that contract.

The New Jersey Supreme Court has acknowledged that, in general, "umbrella policies are intended to provide liability insurance against claims made against the insured by third-parties, and are not intended to provide the insured with a first-party source of recovery." Doto v. Russo, 659 A.2d 1371, 1375 (N.J. 1995). Umbrella policies provide:

> a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment. The premium is comparatively small, for the size of the risk, so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done.

8A John A. & Jean Appleman, *Insurance Law and Practice,* § 4906 at 348 (1981). As such, umbrella policies typically do not provide for underinsured motorist coverage. Doto, 659 A.2d at 1374. "Because umbrella policies are intended simply to provide comprehensive excess liability coverage, the purpose of umbrella coverage 'is fundamentally different from a primary [automobile-] liability policy,' which also contains . . . [underinsured motorist] coverage." Id. (quoting Stiefel v. Bayly, Martin & Fay, Inc., 577 A.2d 1303 (N.J. Super. App. Div. 1990)).

In New Jersey, underinsured motorist insurance is not mandated by N.J. Stat. Ann. § 17:28-1.1. Rather, such coverage is an option which must be offered by the

insurer to the named insured.  Allgor v. Travelers Ins. Co., 654 A.2d 1375, 1378 (N.J. Super. Ct. App. Div. 1995).  "In states such as New Jersey that statutorily require only 'minimum levels' of [uninsured/underinsured motorist] coverage, . . . courts have generally subscribed to the view that umbrella policies do not provide [uninsured/underinsured motorist] coverage."  Doto, 659 A.2d at 1375.  "[A]ny other interpretation would distort the actual purpose of the umbrella policy."  Id. (citation omitted).

Of course, "[a]n insurance policy is a contract," id., so the Court turns to the language of the policy.  Where an insurance policy is unambiguous, the Court "should not engage in a strained construction to support the imposition of liability."  Longobardi v. Chubb Ins. Co., 582 A.2d 1257, 1260 (N.J. 1990); see Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001) (The court must start with the plain language of the policy, and give words "their plain, ordinary meaning.").  Even where it is appropriate to afford a liberal interpretation of policy language in favor of coverage, that process does not permit the "perversion of language or the exercise of inventive powers to create ambiguities where they do not fairly exist."  Powell v. Alemaz, Inc., 760 A.2d 1141, 1147 (N.J. Super Ct. App. Div. 2000).

"[T]he premium paid by the insured does not buy coverage for all . . . damage but only for that type of damage provided for in the policy."  Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 790 (N.J. 1979).  It follows that limitations on coverage [set forth in the exclusion clauses of the policy are intended "to restrict and shape the coverage otherwise afforded."  Id.  "[E]ach exclusion is meant to be read with the insuring agreement."  Id.

While the Court appreciates the advocacy of counsel, the language of the umbrella policy here does not appear to provide coverage for Plaintiff as an underinsured motorist.  Rather, in contrast to the language of the Penn National Policy, the ISOP policy language provides liability insurance against claims made against the insured by third-parties, consistent with umbrella policies, generally.

<u>Conclusion</u>

For these reasons, and in keeping with the discussion held on the record during oral argument,

IT IS ORDERED on this 23rd day of June, 2011 that the motion for summary judgment of Defendants Chartis Claims, Inc. and the Insurance Company of Pennsylvania [25] is hereby <u>GRANTED</u>.

IT IS FURTHER ORDERED that Plaintiff's cross-motion for summary judgment [32] is <u>DENIED</u>.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
U.S.D.J.